**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **LORI ADAMS,** | § § § | |
| **Plaintiff;** | § § § § | **C. A. No. 24-508** |
| **vs** | § § § § | **JURY TRIAL DEMANDED** |
| **HILLCREST BAPTIST MEDICAL CENTER; HILLCREST BAPTIST MEDICAL CENTER D/B/A BAYLOR SCOTT & WHITE MEDICAL CENTER – HILLCREST; BAYLOR SCOTT & WHITE HEALTH; AND BAYLOR SCOTT AND WHITE HOLDINGS,** | § § § § § § § § § § § | |
| **Defendants.** | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Lori Adams, referred to herein as ("Plaintiff"), complaining of Hillcrest Baptist Medical Center; Hillcrest Baptist Medical Center d/b/a Baylor Scott & White Medical Center – Hillcrest, Baylor Scott & White Health, and Baylor Scott and White Holdings (hereinafter referred to as "BS&W-Hillcrest" or "Defendants") and files this Original Complaint and for such would show the Court and Jury the following:

---

## I.

## SUMMARY OF THE COMPLAINT

1.      This is a civil complaint for discrimination, and retaliation in violation of *The Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ et. seq) as amended (ADEA),* as well as violations of applicable state laws, including but not limited to, *Chapter 21 of the Texas Labor Code, Texas Labor Code §21.001 et seq. as amended (TLC) and the Texas Commission on Human Rights Act, as amended (TCHRA).*

2.      This complaint seeks damages as more fully described below, including attorneys' fees, expert fees, taxable costs of the court, pre-judgment and post-judgment interest as a result of the wrongful conduct of the Defendants in violation of the laws of the United States and the State of Texas, including the *ADEA,* the *TLC* and *TCHRA.*

3.      This Court has jurisdiction over this dispute pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367.

4.      This action lies in the United States District Court for the Western District of Texas, Waco Division, pursuant to 28 U.S.C.§1391(b), as the events giving rise to the Plaintiff's claims occurred substantially in McLennan County, Texas.

## II.

## PARTIES

5.      Plaintiff is a female over forty (40) years of age who resides in Waco, Texas.  She was employed by Defendants at their facility located at 100 Hillcrest Medical Blvd., Waco, Texas 76712 (the "Hillcrest Location").

6.      Defendant Hillcrest Baptist Medical Center is a Texas Domestic Nonprofit Corporation that may be served by its registered agent for service of process, Corporation Services Company d/b/a CSC-Lawyers Incorporating Services Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

7.      Defendant Hillcrest Baptist Medical Center d/b/a Baylor Scott & White Medical Center – Hillcrest is a Texas Domestic Nonprofit Corporation that may be served by its registered agent for service of process, Corporation Services Company d/b/a CSC-Lawyers Incorporating Services Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

8.      Defendant Baylor Scott & White Health is a Texas Domestic Nonprofit Corporation that may be served by its registered agent for service of process, Corporation Services Company d/b/a CSC-Lawyers Incorporating Services Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

9.      Defendant Baylor Scott & White Holdings is a Texas Domestic Nonprofit Corporation that may be served by its registered agent for service of process, Corporation Services Company d/b/a CSC-Lawyers Incorporating Services Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

## III.

### JURISDICTION, VENUE AND ADMINISTRATIVE REMEDIES

10.      Jurisdiction is based on federal questions under 28 U.S.C. § 1331 to the extent Plaintiff asserts claims under applicable Federal law, including but not limited to the ADEA.

11.      Jurisdiction of Plaintiff's claims under the applicable state laws, including but not limited to the *Texas Labor Code as amended (TLC),* is also appropriate under *28 U.S.C. §1367, as*

*amended*, since the state law causes of action are so related to the federal claims in the action within the Court's original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

12. Plaintiff has satisfied all prerequisites to this suit, including exhausting all required administrative remedies. Plaintiff timely filed a complaint against Defendants with the Texas Workforce Commission Civil Rights Division (TWCCRD), which is a joint filing with the Equal Employment Opportunity Commission (EEOC) based on their work sharing agreement, exhausted all administrative remedies, and received right to sue notices from the EEOC and the TWCCRD.

13. At all times relevant to this cause of action, Plaintiff was an "employee" of Defendants and Defendants were "employers" as those terms are defined under the ADEA*; 29 U.S.C. §630(a) and (b) as amended*, and *Chapter 21 of the TLC, as amended*.

14. The bases for the causes of action complained of herein substantially occurred at the Hillcrest Location.

## IV.

### CONDITIONS PRECEDENT

15. All conditions precedent have been performed or have occurred.

## V.

### STATEMENT OF FACTS RELATED TO PLAINTIFF'S CLAIMS

16. Plaintiff was employed by Defendants in trauma services for at least twenty-eight (28) years, serving as the leader of the Defendants' trauma services program at the Hillcrest Location for the last nineteen (19) years of her employment. She worked for the Defendants for just under thirty (30) years. At the time of her separation from the Defendants she served as

Director of Trauma Services at the Hillcrest Location.   She was terminated on or about May 9, 2024.

17.     Plaintiff was a well-known and reliable internal resource in the field of trauma services.  She was, and is, also recognized locally, regionally, and state-wide, for her knowledge of trauma services, including serving in multiple leadership positions in the field of trauma.

18.     In June of 2020 Plaintiff began reporting to Ms. LaJuana Jones, the Defendants' Chief Nursing Officer at the Hillcrest Location.  Plaintiff had regular one-on-one meetings with Ms. Jones to report on trauma services at the Hillcrest Location.

19.     BS&W-Hillcrest was (i) verified by the American College of Surgeons ("ACS")[1] and

---

[1] The American College of Surgeons (ACS) is a scientific and educational organization of surgeons that was founded in 1913 to raise the standards of surgical practice and improve the quality of care for all surgical patients. The ACS is dedicated to the ethical and competent practice of surgery.  ACS Quality Programs are developed according to a four-part framework used to evaluate and improve quality of care, consisting of (1) program-specific standards, (2) infrastructure needed to deliver high-quality, high-value care, (3) use of high-quality data, and (4) accreditation/ verification to ensure proper implementation of components one through three. The Committee on Trauma (COT) was founded in 1922 by Charles L. Scudder, MD, FACS, and is the oldest standing committee of the ACS. The COT focuses on a multidisciplinary approach to the care of the injured patient and recognizes that trauma is a surgical disease requiring surgical leadership. The mission of the COT is to develop and implement programs that support injury prevention and ensure optimal patient outcomes across the continuum of care. These programs incorporate advocacy, education, trauma center and trauma system development, best practice dissemination, outcome assessment, and performance improvement (PI). The Verification, Review, and Consultation (VRC) Program is overseen by the Verification Review Committee, a subcommittee of the COT. The VRC Program is an important component of the COT's Trauma Quality Program, which also includes the Trauma Quality Improvement Program (TQIP) and Performance Improvement and Patient Safety (PIPS) Program. The COT first published criteria for the resources and personnel needed for optimal care of the trauma patient in 1976. Since 1987, the VRC Program has verified trauma centers that meet the standards—the presence of the resources, structures, and processes— outlined in Resources for Optimal Care of the Injured Patient. The designation of trauma centers is a regulatory process performed by authorized regional governmental or other agencies.

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                    **Page 5 of 13**
*Lori Adams v. Hillcrest Baptist Medical Center; Hillcrest Baptist Medical*
*Center d/b/a Baylor Scott & White Medical Center – Hillcrest et al.*

(ii) designated by the Texas Department of Safety and Health Services ("DSHS") as a Level II trauma center. This trauma level designation required that the medical institution meet certain levels of expertise, capabilities, and services. The ACS requires that the medical institution undergo a verification process every three (3) years. The DSHS uses the ACS verification process to designate (or redesignate) the medical institution every three (3) years.

20. On or about April 10-11, 2024, Plaintiff, as part of her job duties, participated in the ACS survey process as part of the assessment of the trauma level verification/designation of BS&W-Hillcrest. Her participation included among other things, submitting pre-survey documents, and truthfully and accurately answering questions posed by the interviewers evaluating the BS&W-Hillcrest trauma services program's capabilities and services.

21. Plaintiff was not involved in any ACS findings or determinations.

22. On or about April 12, 2024, after the survey concluded, Plaintiff learned that BS&W-Hillcrest administration, especially Ms. Jones, was very upset with the ACS survey findings. The ACS survey findings included a statement that the BS&W-Hillcrest administration failed to provide the appropriate resources and financial transparency for the trauma program.

23. On April 12, 2024, Ms. Jones confronted Plaintiff and angrily accused Plaintiff of "throwing BS&W-Hillcrest under the bus." Ms. Jones also stated that Plaintiff did not "manage administration up" when her answers were not couched in ways so to make the actions and capabilities of the trauma program at BS&W-Hillcrest appear more in compliance with the ACS survey than was in fact the case. Plaintiff was stunned by her supervisor's statements. Plaintiff attempted to discuss the ACS survey findings with Ms. Jones, but Ms. Jones was not interested in such a discussion. She blamed Plaintiff for not supporting BS&W-Hillcrest administration. Plaintiff was even more puzzled because Ms. Jones was reacting to Plaintiff performing her job duties, including providing truthful and

accurate information regarding the Hillcrest Location's trauma care and staffing capabilities as required by the ACS survey.

24.     Ms. Jones told Plaintiff that "things would be difficult" for Plaintiff over the next ninety (90) to one hundred and twenty (120) days.  Plaintiff asked Ms. Jones if she [Ms. Jones] was threatening Plaintiff's job.  Ms. Jones responded that "Plaintiff had been with BS&W-Hillcrest for a long time and it may be time for someone new to fill Plaintiff's job."  Plaintiff was extremely concerned by her supervisor's threats which were made in an aggressive and intimidating manner.

25.     Immediately following the encounter with Ms. Jones, Plaintiff discussed Ms. Jones' threats, actions, intimidation, and threatening Plaintiff's job with others at BSW-Hillcrest.  Plaintiff was encouraged to report the exchange with Ms. Jones to the BS&W- Hillcrest Human Resources Department.

26.     Plaintiff then immediately went to the BS&W-Hillcrest Human Resources Department.  Plaintiff spoke to Ms. Corey Higginson.  Plaintiff reported Ms. Jones' threats and age-related statements to Ms. Higginson.  Plaintiff also told Ms. Higginson that Plaintiff knew of other nursing directors who were concerned about how Ms. Jones treated them.

27.     Ms. Higginson downplayed Ms. Jones' threats against Plaintiff.

28.     Plaintiff was very concerned about Ms. Jones retaliating against her.  She had an upcoming regularly scheduled one-on-one meeting with Ms. Jones on April 16, 2024.  Plaintiff asked Ms. Higginson to attend this meeting.

29.     When Plaintiff arrived at the meeting, Ms. Jones and Ms. Higginson were already present.  Ms. Jones and Ms. Higginson greeted Plaintiff as if the harassment, intimidation, and threats to Plaintiff's employment made by Ms. Jones on April 12th had not occurred.  Plaintiff raised the

subject of the threats, and hostile statements about Plaintiff's job that Ms. Jones had made to Plaintiff. Ms. Jones claimed that she had been coaching Plaintiff. Plaintiff stated that yelling, making false accusations against someone, and threatening Plaintiff's employment did not feel like coaching.

30.    Ms. Jones raised one incident that she [Ms. Jones] had learned of from an employee. The incident involved and exchange between the Plaintiff and a third employee. Ms. Jones did not witness the interaction between Plaintiff and the third employee. Plaintiff told Ms. Jones that she [Plaintiff] had already addressed that incident directly with the third employee. Ms. Jones said that she [Ms. Jones] had spoken to the employee who had told Ms. Jones about the incident. Ms. Jones said that she [Ms. Jones] told the employee that the department is "close-knit" and there was some stress due to the ACS survey. There was no further discussion the incident at the meeting.

31.    Ms. Jones asked Plaintiff why she [Plaintiff] was concerned about the relationship between her and Ms. Jones. Plaintiff stated that Ms. Jones' yelling, false accusations and threats to Plaintiff's employment caused Plaintiff to fear for her job. Ms. Jones told Plaintiff that everything was fine between them. Ms. Jones also said that Plaintiff was a valuable asset to BS&W-Hillcrest hospital and community. Ms. Jones hugged Plaintiff and said that they just need to move forward.

32.    The April 16th meeting lasted about thirty (30) minutes. Neither Ms. Jones nor Ms. Higginson told Plaintiff that she [Plaintiff] was creating an unhealthy work environment.

33.    On or about April 27, 2024, Plaintiff attended a planned business trip that was out of state. Between April 16th and April 27th neither Ms. Jones, nor Ms. Higginson gave Plaintiff any indication that Plaintiff was creating an unhealthy work environment.

34.    Plaintiff returned to the office on or about May 2, 2024. Plaintiff performed her job duties. Again, neither Ms. Jones nor Ms. Higginson told Plaintiff that there were any issues or concerns

with Plaintiff's job performance, or that Plaintiff was creating an unhealthy work environment.

35.     On the evening of May 8, 2024, Plaintiff received an invitation to attend a meeting with Ms. Jones and Ms. Higginson scheduled for May 9, 2024 at 9:00 a.m. at the Human Resources Department.

36.     Plaintiff arrived at the May 9, 2024, meeting.  Ms. Jones stated there had been complaints alleging Plaintiff created an "unhealthy work environment" and that the Defendants were immediately terminating Plaintiff's employment.  Plaintiff was stunned.

37.     Between April 16th and May 8th, neither Ms. Jones, nor Ms. Higginson, told Plaintiff that Plaintiff created an unhealthy work environment, let alone that there were any performance issues that might warrant Plaintiff's termination.

38.     Plaintiff asked Ms. Jones for specifics to try to understand what was happening. Instead of providing such information, Plaintiff was given some paperwork and a security guard escorted Plaintiff to her office and then out of the building.

39.     This rush to judgment in terminating Plaintiff occurred much sooner than the ninety (90) to one hundred (120) day timeframe threatened by Ms. Jones on April 12, 2024.

40.     Further, on information and belief, a younger and less qualified person replaced Plaintiff.

## VI.

## CAUSES OF ACTION

### COUNT ONE – DISCRIMINATION, HARASSMENT AND RETALIATION UNDER ADEA

41.     Plaintiff hereby incorporates by reference paragraphs one (1) through and including

forty (40) of this Complaint as though fully set forth herein.

42.    Plaintiff is a member of a protected class as she is a female who was over forty (40) during the period complained of in this cause of action.

43.    Plaintiff was at all times qualified to perform the duties of a Director of Trauma Services.

44.    Plaintiff reported the very serious discrimination, threats, harassment and intimidation by Ms. Jones to the Human Resources Department at BS&W-Hillcrest.

45.    The Defendants were dismissive of Plaintiff's report of Ms. Jones (i) threatening Plaintiff's employment, (ii) discriminating against Plaintiff because of Plaintiff's age, (iii) harassing Plaintiff, and (iv) retaliating against Plaintiff.

46.    Defendants continuously assured Plaintiff that there were no performance issues involving the Plaintiff.

47.    Notwithstanding such assurances, Defendants initiated a questionable investigation of Plaintiff.  Defendants never informed Plaintiff that she was under investigation.  Further Defendants did not interview Plaintiff in connection with or involving any allegations of the Plaintiff misconduct, including claims that Plaintiff created an unhealthy work environment.

48.    The Defendants did not terminate Plaintiff for any performance related issue. Plaintiff was terminated because, as stated by Ms. Jones, Plaintiff had been with Defendants for a long time, and it was time for someone new to fill Plaintiff's job.

49.    Plaintiff suffered an adverse employment action because of her age. Her supervisor, Ms. Jones, angrily warned (i) Plaintiff that things would not go well for her in the next 90 to 120 days, and (ii) that Plaintiff had been around for long time, and that it was time for a new person to

perform Plaintiff's job.

50.    Defendants retaliated against Plaintiff and summarily terminated an older employee.

51.    The Defendants (a) discriminated against the Plaintiff because of her age, (b) harassed her, (c) threatened and intimidated her (d) retaliated against her, and (e) wrongfully terminated her employment.

52.    Defendants' actions were taken with willful and wanton disregard of Plaintiff's rights under applicable federal and state laws, including the ADEA.

53.    As a direct and proximate result of Defendants' unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered humiliation, degradation, emotional distress, other consequential damages and lost wages and benefits.  Defendants' failure to follow the requirements of the applicable state laws resulted in damages as hereinafter set forth.

54.    On information and belief, a less qualified younger employee replaced Plaintiff.

### COUNT II – DISCRIMINATION, HARASSMENT AND RETALIATION UNDER THE TEXAS LABOR CODE AND THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

55. Plaintiff hereby incorporates by reference paragraphs one (1) through and including fifty-four (54) of this Complaint as though fully set forth herein.

56.    The Defendants' discriminatory actions included (a) termination based on age, (b) threatening, intimidating, and creating a hostile work environment, and (c) replacing Plaintiff with a younger less qualified person.

57.    Plaintiff was an "employee," and each Defendant was an "employer" as those terms

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                          **Page 11 of 13**
*Lori Adams v. Hillcrest Baptist Medical Center; Hillcrest Baptist Medical*
*Center d/b/a Baylor Scott & White Medical Center – Hillcrest et al.*

are defined under applicable state laws, including *Chapter 21 as amended of the TLC*, and *TCHRA as amended.*

58.    Defendants discriminated against Plaintiff as described above, including retaliating against Plaintiff, and wrongfully terminating her employment.

59.    Defendants' actions were violations of applicable state laws, including but not limited to *Chapter 21 of the Texas Labor Code, Labor Code § 21.001 et seq. as amended (TLC) and the Texas Commission on Human Rights Act, as amended (TCHRA).*

60.    As a direct and proximate result of Defendants' unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered humiliation, degradation, emotional distress, other consequential damages and lost wages and benefits.  Defendants' failure to follow the requirements of the applicable state laws resulted in damages as  hereinafter set forth.

## VII.

## DAMAGES

61.    As a result of Defendants' unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost employment benefits in the past and employment benefits in the future.

62.    Defendants intentionally engaged in unlawful employment practices by discriminating and retaliating against Plaintiff.  Plaintiff additionally sues for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

63.     The conduct committed by the Defendants against the Plaintiff is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiff.    Therefore, Plaintiff additionally sues for other damages, including but not limited to, liquidated damages.

## VIII.

## JURY DEMAND

64.     Plaintiff hereby respectfully demands a trial by jury of all issues and facts in this case and tenders herewith the requisite jury fee.

## IX.

## PRAYER

WHEREFORE, Plaintiff requests that Plaintiff be awarded relief and damages as stated above, including past and future lost compensation and benefits; past and future compensatory damages including, but not limited to, lost wages and benefits, in such amount as will reasonably compensate her for her losses and damages for emotional distress; punitive damages; liquidated damages; injunctive relief; attorneys' fees; pre- and post- judgement interest at the highest rate allowable;  costs of court, and such other relief, both at law and in equity, as Plaintiff may be justly entitled.                                                    Respectfully submitted,

**BEARD KULTGEN BROPHY BOSTWICK & DICKSON, PLLC**

/s/ Gail L. Peek _____
Gail L. Peek
State Bar No. 24028749
220 South 4th Street
Waco, Texas 76701
(254) 776-5500 – Telephone
(254) 776-3591 – Fax
peek@thetexasfirm.com
ATTORNEY FOR PLAINTIFF

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                    **Page 13 of 13**
*Lori Adams v. Hillcrest Baptist Medical Center; Hillcrest Baptist Medical Center d/b/a Baylor Scott & White Medical Center – Hillcrest et al.*